# United States Court of Appeals

### For the Eighth Circuit

_____

No. 25-1678

_____

United States of America

*Plaintiff - Appellee*

v.

John Francis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 15, 2026
Filed: July 15, 2026
[Unpublished]

_____

Before L.R. SMITH, BENTON, and STRAS, Circuit Judges.

_____

PER CURIAM.

A jury convicted John Francis of a drug offense and firearm offense. On appeal, Francis argues that the district court[1] erred when it denied his pretrial motion to suppress evidence. He also argues that the government failed to present sufficient evidence to submit the case to the jury. We affirm.

_____

[1]The Honorable Susan M. Bazis, United States District Judge for the District of Nebraska.

Saline County Deputy Tyson Osborn observed Francis driving on Interstate 80. Believing that Francis looked suspicious, Deputy Osborn decided to follow him. Francis was driving a rented Chevrolet Tahoe. Deputy Osborn activated his police car's lights and sirens to pull Francis over for drifting into the fog line. Francis did not stop. Instead, Francis sped away, leading Deputy Osborn on a 28-minute, high-speed chase that averaged 100 miles per hour and at points exceeded 115 miles per hour. Other law enforcement cruisers had to assist Deputy Osborn in pursuit of Francis because Deputy Osborn's vehicle could not keep up with Francis's. Eventually, the officers ended Francis's flight using stop sticks[2] to deflate the Tahoe's tires.

Deputy Osborn searched Francis and recovered $2,000 in cash from his sweatshirt. He also searched the Tahoe. In the Tahoe's center-console cupholder, Deputy Osborn recovered a loaded handgun and a cellphone. In the front passenger seat, he recovered a duffel bag containing a plastic bag of methylenedioxymethamphetamine (MDMA) and a plastic bag of clothes, including a coat with about $4,000 in it. In the vehicle's center console, Deputy Osborn recovered a box of rubberbands. On the floorboard behind the passenger seat, Deputy Osborn recovered additional plastic bags like the one containing the MDMA. Finally, Deputy Osborn recovered the Tahoe's rental agreement and a driver's license, both bearing a name other than Francis's.

The government charged Francis with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and carrying or using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Before trial, Francis moved to suppress the evidence seized from the Tahoe. The district court denied his motion.

---

[2]Stop sticks are a tire-deflation device used by law enforcement officers during vehicle pursuits.

The case proceeded to a jury trial. The government presented evidence through four witnesses: Deputy Osborn, Nebraska State Patrol Trooper Brandon Sutton, State Patrol Crime Lab Technician Spencer Effle, and Lincoln Police Department Sergeant William Koepke. Deputy Osborn and Trooper Sutton testified regarding the high-speed chase and their subsequent search of Francis and the Tahoe. Effle testified as a forensic science expert about the MDMA recovered from the vehicle.

Sergeant Koepke testified as an expert in the field of narcotics trafficking. He told the jury that Interstate 80 is a drug trafficking corridor commonly used to transport drugs through the United States. He also testified regarding indicia of drug trafficking, including the weight of the drugs recovered, the use of rental vehicles, large amounts of cash, firearms, and plastic bags that drug traffickers frequently use to package drugs and money. On cross-examination, Sergeant Koepke discussed some things that the officers could have done better in Francis's case, such as wearing gloves when touching the recovered property and following up on information about the rented Tahoe.

The jury found Francis guilty of both the drug and firearm offenses. The district court denied Francis's post-trial motion for a new trial based on the sufficiency of the evidence and sentenced him to 181 months' imprisonment.

On appeal, Francis argues that the district court erred when it denied his motion to suppress. "In considering denials of motions to suppress evidence, a mixed standard of review applies. We review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Charles*, 125 F.4th 904, 909 (8th Cir. 2025) (citation modified). Francis also argues that the government presented insufficient evidence to submit the case to the jury. In considering the sufficiency of the evidence, we review de novo. *United States v. Johnson*, 745 F.3d

866, 868–69 (8th Cir. 2014).[3] "We view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence. We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* at 869 (citation modified).

Here, the district court did not err when it denied Francis's motion to suppress. "If evidence at a traffic stop is obtained through a Fourth Amendment violation it is normally subject to exclusion." *United States v. Betts*, 88 F.4th 769, 773 (8th Cir. 2023) (citation modified). Francis argues that the traffic stop violated his Fourth Amendment rights because he never committed the traffic violation that Deputy Osborn initially attempted to pull him over for, which was driving on the shoulder of the road. But whether Francis violated the Nebraska law that prohibits driving on the shoulder of the road became irrelevant when he refused to stop and chose to lead law enforcement officers on a 28-minute, high-speed chase. "Resistance to even an illegal stop or arrest can furnish grounds for a legitimate arrest." *United States v. Pickens*, 58 F.4th 983, 988 (8th Cir. 2023); *see also United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) ("[A] defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest."); *United States v. Schmidt*, 403 F.3d 1009, 1016 (8th Cir. 2005) ("[T]he [F]ourth [A]mendment does not bar evidence obtained after [the defendant] committed a new crime."). By leading law enforcement officers on a high-speed chase, during which he drove over 115 miles per hour and did not stop until the officers deflated the Tahoe's tires, Francis gave the officers a legitimate reason to stop him, arrest him, and search the Tahoe. Thus, the district court did not err when it declined to suppress evidence that the officers recovered after the chase.

Nor did the district court err when it submitted the case to the jury. Francis argues that the government did not establish that he knowingly possessed the drugs

---

[3]The government argues that we should review the suppression issue for plain error because Francis did not preserve the issue for appeal. Concluding that the government would still prevail under the non-deferential de novo standard, we will assume without deciding that de novo review applies.

inside of the duffel bag. In support of his argument, Francis cites several cases. *See, e.g.*, *United States v. Aponte*, 619 F.3d 799, 805–09 (8th Cir. 2010) (concluding that the evidence presented at trial was insufficient to find defendants guilty where the drugs were well-hidden inside of a cooler located in the vehicle's cargo area, two individuals occupied the vehicle, and common indicia of guilty consciences were not present); *United States v. Mendoza-Larios*, 416 F.3d 872, 874–76 (8th Cir. 2005) (concluding that the evidence presented at trial was insufficient to find defendant guilty where the drugs were hidden inside of a compartment welded within a space under the passenger-side dash, two individuals occupied the vehicle, and "both defendants were cooperative, not nervous, and acted like normal motorists"); *United States v. Pace*, 922 F.2d 451, 452–53 (8th Cir. 1990) (concluding that the evidence presented at trial was insufficient to find defendant guilty where officers found drugs in defendant's passenger's luggage located in the cargo area, and the government did not present evidence that defendant ever explored the cargo area or knew what was in his passenger's luggage).

This case, however, is distinguishable from those that Francis cites. Unlike those cases: (1) Francis was the sole occupant of the vehicle; (2) there were large quantities of cash; (3) the duffel bag containing the large quantity of drugs was in the passenger seat within Francis's arm reach; (4) Francis had a loaded firearm; (5) there were rubber bands and plastic bags which Sergeant Koepke explained are commonly used to package drugs and money; and (6) Francis fled when officers attempted to initiate a traffic stop, which reflected consciousness of guilt. Viewing this evidence in the light most favorable to the jury's guilty verdict and granting all reasonable inferences that are supported by the evidence, a reasonable jury could have found Francis guilty of the drug offense and the firearm offense beyond a reasonable doubt. *See United States v. Fetters*, 698 F.3d 653, 658 (8th Cir. 2012) ("The jury may infer the requisite nexus between the firearm and the crime when the firearm is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking." (citation modified)).

Accordingly, we affirm the judgment of the district court.

_____